UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE CARTER SHACKELFORD,<br><br>Petitioner,<br><br>v.<br><br>WARDEN RANDY BLADES,<br><br>Respondent. | Case No. 1:15-cv-00020-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is an Amended Petition for Writ of Habeas Corpus filed by Idaho prisoner Dale Carter Shackelford ("Petitioner" or "Shackelford"), challenging Petitioner's Latah County convictions and fixed life sentences. Dkt. 9. The Court previously dismissed Claims 2(a), 5, 6, 7, 8, and 10 of the Amended Petition. *See* Dkt. 29. The remaining claims in the Amended Petition—Claims 1, 2(b), 3, 4, and 9—are now fully briefed and ripe for adjudication. Dkt. 37, 39, 44.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 14.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

Absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1),

the following facts of Petitioner's case, as described by the Idaho Supreme Court, are

presumed correct[1]:

> Dale Shackelford was convicted of the murders of his ex-wife, Donna Fontaine, and her boyfriend, Fred Palahniuk, which occurred near the Latah County town of Kendrick, Idaho, in May 1999. The State alleged that Shackelford conspired with Martha Millar, Bernadette Lasater, Mary Abitz, Sonja Abitz, and, John Abitz. Millar and Lasater worked for Shackelford's trucking business, Shackelford Enterprises, in Missouri. The Abitz family lived near the residence where the bodies of Donna and Fred were found. Sonja Abitz was Shackelford's fiancée at the time of the murders, and John and Mary Abitz are Sonja's parents. The alleged conspirators eventually pled guilty to charges related to the murders.
>
> Shackelford and Donna married in Missouri in December 1995 and the relationship ended in the summer of 1997, with the couple divorcing in November of that year. Donna accused Shackelford of raping her in July 1997, and charges were filed in 1998. In the spring of 1999, Donna developed a relationship with Fred and, on May 28, 1999, the two visited Donna's brother, Gary Fontaine, at the home Gary and Donna's daughter owned together outside of Kendrick. The morning of May 29, Donna, Fred, and Gary went to the Locust Blossom Festival in Kendrick, where they met John, Mary, and Sonja Abitz.
>
> After leaving the festival, Gary went to the Abitz's house, but he left around dark, returned home, noticed Donna's pickup in the driveway, and smelled smoke. Gary called the Abitz's house and reported that his two-story garage was on fire. Mary, Sonja, Ted Meske (Mary's brother), and Shackelford arrived at

---

[1] The Court previously described the procedural history of Petitioner's case, and it will not do so again here except as necessary to explain the Court's decision. *See* Dkt. 29.

the fire and various individuals tried to extinguish it, but were unsuccessful.

At 7:40 p.m., Latah County Sheriff Patrol Deputy Richard Skiles was called to investigate the fire at 2168 Three Bear Road. When Skiles arrived at the scene, nearly an hour later, he observed several persons—including Gary Fontaine, Mary Abitz, Sonja Abitz, Brian Abitz (Sonja's brother), Ted Meske, and Shackelford—standing near the garage that was completely engulfed in flames. Based upon information obtained from Ted and Shackelford, Deputy Skiles contacted dispatch to have an on-call detective sent "because there was a possibility there could be a suicide victim in the fire." By the time the fire department arrived, the garage had been utterly destroyed. Several hours later, after the fire had been extinguished, two bodies were found in the rubble. The bodies were subsequently identified as the remains of Donna and Fred. At trial, a state fire investigator testified as to his opinion that the fire was arson.

Doctor Robert Cihak conducted autopsies of the remains, which were severely burned. Shotgun pellets were found in Donna's right chest region and a bullet was found in the back of her neck. Dr. Cihak opined that the bullet wound was fatal and was inflicted when Donna was still alive. A bullet was also found in Fred's body behind the upper breastbone, which Dr. Cihak concluded was the cause of death. Dr. Cihak offered his opinion that Donna and Fred were dead at the time of the fire.

*State v. Shackelford*, 247 P.3d 582, 588–89 (Idaho 2010) (*Shackelford I*) (also found at

State's Lodging C-19 at 2-3) (footnote omitted).

The jury found Petitioner guilty of two counts of first-degree murder, as well as

conspiracy to commit murder, arson, conspiracy to commit arson, and preparing false

evidence. Petitioner received fixed life sentences for each murder conviction and the

murder-conspiracy conviction,[2] and he received shorter fixed terms of imprisonment on

---

[2] Petitioner initially was sentenced to death on the two murder counts. Those sentences were later invalidated pursuant to *Ring v. Arizona*, 536 U.S. 584 (2002), which holds that a jury—rather than a judge—

the remaining convictions.

## CLAIMS PRESENTLY AT ISSUE

Petitioner's federal habeas corpus petition asserts numerous claims, five of which remain for adjudication on the merits.[3] Claim 1 asserts that Petitioner was denied his counsel of choice in violation of the Sixth Amendment. Claim 2(b) asserts a due process violation based on the jury instruction on the false-evidence charge, which did not define the word "produced." In Claim 3, Petitioner asserts a violation of the Ex Post Facto Clause based on the trial court's refusal to give an instruction regarding circumstantial evidence. Claim 4 alleges that the trial court improperly failed to give an instruction requiring unanimity with respect to the overt acts committed, and which co-conspirator committed those acts, in furtherance of the conspiracy to commit arson and murder. And in Claim 9, Petitioner alleges that, under the Sixth Amendment, the jury was required to find aggravating factors that would render Petitioner eligible for a fixed life sentence. *See* Dkt. 9 at 12-85.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas

---

must find statutory aggravators that render a defendant eligible for the death penalty. *See Shackelford I*, 247 P.3d at 615. The state elected not to seek the death penalty on resentencing. *See* Dkt. 29 at 2-3.

[3] In his reply in support of his Petition, Petitioner attempts to recharacterize some of his claims. *See* Dkt. 39 (filed Aug. 22, 2018). However, Petitioner knew no later than March 29, 2018, how the Court had construed his claims. *See* Dkt. 29 at 5-6. Therefore, the Court analyzes the claims as it (and Respondent) previously construed them.

relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000)*. "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme

Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778.

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

Generally, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish

that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted).

## DISCUSSION

### 1.    Claim 1: Denial of Counsel of Choice

When Petitioner was arrested on February 12, 2000, the police seized approximately $5,000 from him. Petitioner claims he had intended to use this money to hire private counsel "for his initial appearance and arraignment in the event of his impending arrest." (Dkt. 9 at 12.) Claim 1 asserts that, as a result of the seizure of these funds, Petitioner was denied his right to hire private counsel of his choice.

At Petitioner's initial arraignment, he did not assert his right to hire private counsel. Instead, he requested the *appointment* of counsel. (State's Lodging A-16 at 16.) The trial court instructed Petitioner to fill out the required financial form, but Petitioner claimed he did not have enough information to do so:

> THE DEFENDANT: …I have no information. I didn't even have shoes or glasses until the minute I walked in this door. I don't have any of my information. I have nothing whatsoever.
>
> THE COURT: What information do you need?
>
> THE DEFENDANT: I don't even know where I am right now. I mean, as far as Latah County, I do know that. My current address, anything about employers, things of that nature. My secretaries have been arrested, my friends have been arrested.

I don't even know if I have a house left. I don't even know if my dogs are starving to death.

    … [A]s far as my monthly earnings prior to arrest, I don't know of anything. I do know that I had enough money in my pocket when I was thrown to the floor in the sheriff's office to actually hire an attorney to appear with me at this proceeding. But that money has been—according to the deputy—the corporal who was at the jail that evening—was turned over as evidence to a detective over $4,000.

THE COURT: So you believe you have the wherewithal to retain counsel?

THE DEFENDANT: I may well have, but at this point I don't know what I have left ….

…

THE COURT: *Let's deal with your request to have counsel appointed for you.* Do you have other assets that would be available to you to retain counsel?

THE DEFENDANT: It's a possibility, Your Honor. *I do not know at this point.* I have vehicles which I could sell, but I don't know where the vehicles are right now. I had money in my pocket, but Detective Hall took it as evidence and now I'm being told that I have no money ….

…

THE COURT: Well, Mr. Shackelford, *do you wish to be considered for the appointment of counsel or do you want to have counsel retained by you*?

THE DEFENDANT: *I do not know if I can afford counsel*, Your Honor. I've not been able to … find out if I can retain counsel…. I cannot tell you a lot of the answers that are required on here. In all honesty I cannot.

THE COURT: Well, what information do you need in order to make an informed decision on that?

> THE DEFENDANT: Whether I have any income from any source right now would be one of the very first things.

(*Id.* at 17-20 (emphasis added).) The judge gave Petitioner the opportunity to fill out the form and continued the hearing until the next day. (*Id*. at 20-21.)

The court again asked Petitioner if he had filled out the form, and Petitioner again stated that he could not do so:

> Again, Your Honor, I have the same problem, actually it's been multiplied….
>
> …So again, *I have talked with counsel … [who] have described to me that a case of this magnitude is going to take at least $100,000. I can just about guarantee I don't have that much* in my canteen account, Your Honor….
>
> …
>
> I can fill it out the best I can, Your Honor, but I can almost guarantee it won't be an accurate representation ….

(*Id*. at 31-32 (emphasis added).) The court instructed Petitioner to fill out the form as best he could.

After reviewing that form, the trial court could not determine whether Petitioner qualified for the appointment of counsel or not. Therefore, the court "tentatively" appointed counsel and stated, "[T]o the extent that you have resources to pay them that are discovered at some point in the future, I will use them to compensate the attorneys that I appoint for you." (*Id*. at 33.)

The next day, the prosecutor offered to release the $5,000 seized when Petitioner was arrested, but Petitioner's appointed counsel wanted to "prepare a response on the financial matters dealing with all of that, rather than just the cash that was in his pocket."

(*Id*. at 55-56.) The trial court expressed it would be necessary to have "more complete information … identifying what resources [Petitioner] has." (*Id*. at 57.) The court reiterated its tentative ruling from the day before:

> THE COURT: *[T]o the extent that you are able to pay for counsel, I expect you to pay for counsel. To the extent that you are unable to pay for counsel, I expect [your appointed attorneys] to represent you at county expense*. But if you have resources that are available, I would expect those resources to be used to reimburse the county for their expenses in retaining [appointed counsel] in representing you.
>
> Now*, if you want different counsel, that's your prerogative, but you're going to have to hire different counsel*…. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor, I do.

(*Id*. at 57-58 (emphasis added).)

Petitioner's counsel followed up with a motion to release the $5,000. (State's Lodging A-1 at 125-26.) At the motion hearing, the trial court expressed frustration with the continued lack of information about Petitioner's finances:

> I don't remember making a determination that Mr. Shackelford is indigent. I remember getting statements from him that made it very difficult for me to make that determination and in an abundance of caution I appointed counsel at county expense. *I don't think I made a determination that he's indigent.* I specifically do not recall making that determination.
>
> …
>
> *… I made several attempts to elicit information from Mr. Shackelford to determine his ability to retain counsel. I don't think he was trying to be helpful, I don't think he was trying to be candid.*

(State's Lodging A-16 at 99-107 (emphasis added).) The court denied the motion for release of property but ordered that money be placed in an interest-bearing account. (*Id*. at 109.) It does not appear that the issue of appointed-versus-retained counsel was addressed again, and Petitioner proceeded to trial with his appointed counsel.

### A.     *Clearly-Established Law*

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel, including the "right of a defendant who does not require appointed counsel to choose who will represent him." *Wheat v. United States*, 486 U.S. 153, 159 (1988). However, because "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," the right to counsel of one's choice "is circumscribed in several important respects." *Id*.

Importantly, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). A defendant "may not insist on representation by an attorney he cannot afford." *Wheat*, 486 U.S. at 159.

Another limitation on the right to counsel of one's choice relates to court scheduling and docket management. Trial courts have "broad discretion ... on matters of continuances," even when the reason for the requested continuance is to retain counsel of one's choice. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *see also Gonzalez-Lopez*, 548 U.S. at 152 ("We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.") (internal

citation omitted). Where a defendant's request for a continuance to retain counsel of his choice is made for purposes of delay, a judge may deny the continuance and require the accused to proceed as represented by his current counsel. *See, e.g., United States v. Vallery*, 108 F.3d 155, 157 (8th Cir. 1997) ("The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice. If a defendant's attempted exercise of his choice is dilatory, the trial court can require him to proceed with designated counsel.") (internal quotation marks and citation omitted).

Improper denial of a defendant's right to counsel of choice is structural error. That is, if a court determines that the right to counsel of one's choice was violated, the court need not "conduct an ineffectiveness or prejudice inquiry." *Id.* at 148, 149–50 (2006).

### B.       *The State Court's Rejection of Claim 1 Was Not Unreasonable under AEDPA*

The Idaho Supreme Court made factual findings that Petitioner did not specifically request counsel of choice and that he did not have sufficient funds to retain private counsel. *Shackelford I*, 247 P.3d at 609. It also adopted the trial court's findings that

> *The Petitioner was given several opportunities during the early stages of his case to show he had the wherewithal to hire an attorney during his criminal proceedings. He was unable to do so. He also engaged in evasiveness to a degree never before or since witnessed by this Court.* The Petitioner has not, and cannot, allege that the $5,000 seized would have been sufficient to finance his defense to capital murder. Such a claim is absurd. The Petitioner's trial counsel, ... were jointly paid over $500,000 to represent the Petitioner through his sentencing. Arguing that $5,000, one-hundredth of the amount spent, would have been sufficient to secure representation on a case of this magnitude is ludicrous.

*Id.* (quoting State's Lodging B-16 at 3598) (emphasis added) (omission in original). Relying on those findings, the appellate court held that Petitioner was not deprived of his right to counsel-of-choice.

Petitioner has not established that the factual findings of the state courts—that he did not specifically request counsel of choice, that he could not afford to hire private counsel, and that he engaged in egregiously evasive tactics to avoid establishing his ability to hire private counsel—were unreasonable. Petitioner himself requested *appointed* counsel at his first appearance and never clearly invoked his right to retain counsel.

Based on those factual findings, the state court reasonably concluded that Petitioner was not denied his right to counsel of choice. *See* 28 U.S.C. § 2254(d). Given that Petitioner did not request private counsel, evaded the trial court's reasonable requests for information, and did not establish that he could afford to hire private counsel, Petitioner is not entitled to habeas relief on Claim 1.

**2.      Claim 2(b), False Evidence Charge: Jury Instruction No. 30**

The Idaho statute criminalizing the preparation of false evidence provides as follows:

> Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, *with intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose, as genuine or true*, upon any trial, proceeding or inquiry whatever, authorized by law, is guilty of felony.

Idaho Code § 18-2602 (emphasis added).[4]

---

[4] The current version of the statute is the same as the version in effect at the time of Petitioner's crime.

Jury Instruction No. 30 used this statutory language. It required to jury to find, beyond a reasonable doubt, that Petitioner willfully prepared false evidence "with the intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose, as genuine or true, … at a grand jury proceeding in Latah County." State's Lodging A-11 at 2209. Claim 2(b) asserts that the instruction's failure to define "produced" violated Petitioner's right to due process.[5]

### A.  Clearly-Established Law

Because Petitioner challenges a jury instruction that quotes a state statute, his burden to show constitutional error is "especially heavy." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation. *Id.* (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). To succeed on a due process claim that an instruction was unconstitutional, a habeas petitioner "must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.*

In determining whether a jury instruction violated due process, a federal habeas court may not judge the jury instruction "in artificial isolation," but rather must consider

---

[5] To the extent Petitioner asserts actual innocence in Claim 2(b), *see* Dkt. 39 at 6, such a claim is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *Stephenson v. Blades*, No. 1:13-CV-00285-BLW, 2014 WL 3509448, at *7 (D. Idaho July 14, 2014) (unpublished) ("[A] freestanding claim of actual innocence is not cognizable on collateral review in a non-capital federal habeas corpus action.").

the instruction "in the context of the instructions as a whole and the trial record." *Id.* at 191 (internal quotation marks omitted). Therefore, the Court cannot grant habeas relief on Petitioner's jury instruction claim unless every fairminded jurist would necessarily conclude that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted); *see Richter*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

### B.  *The State Court's Rejection of Claim 2(b) Was Not Unreasonable under AEDPA*

The Idaho Supreme Court rejected Claim 2(b), finding that the term "produced" was not ambiguous:

> The jury instruction itself answers the question of what the term "produced" meant because it provides that the evidence was produced "at a grand jury proceeding." Thus, Shackelford's argument that "produced" may have meant actually making the tape or giving the tape to someone or bringing it to someone's attention is invalid because the evidence had to be produced as genuine or true at the actual grand jury proceeding. There is nothing ambiguous about the jury instruction when read in its entirety.

*Shackelford I*, 247 P.3d at 606. Based on its conclusion that the word "produced" was unambiguous, the court held that "the jury was properly and adequately instructed." *Id.*

The state court reasonably found that Jury Instruction No. 30 was not ambiguous. And this Court has found no United States Supreme Court precedent clearly establishing

that the instruction was required to define the term "produced." Thus, Petitioner has not

met his "especially heavy" burden of showing not only that the instruction was ambiguous,

but also that the prosecution was effectively relieved of its burden of proof, *Sarausad*, 555

U.S. at 190, and he is not entitled to relief on Claim 2(b) under § 2254(d).

**3.      Claim 3: Ex Post Facto Clause and the Failure to Give a *Holder* Instruction**

At the time of Petitioner's crimes, Idaho courts required that, where the

prosecution's case was based entirely on circumstantial evidence, the trial court had to

instruct the jury as follows:

> You are not permitted to find the defendant guilty of the crime
> charged against him based on circumstantial evidence unless
> the proved circumstances are not only consistent with the
> theory that the defendant is guilty of the crime, but cannot be
> reconciled with any other rational conclusion and each fact
> which is essential to complete a set of circumstances necessary
> to establish the defendant's guilt has been proved beyond a
> reasonable doubt.
>
> Also, if the evidence is susceptible of two reasonable
> interpretations, one of which points to the defendant's guilt and
> the other to his innocence, it is your duty to adopt that
> interpretation which points to the defendant's innocence, and
> reject the other which points to his guilt.

*State v. Holder*, 594 P.2d 639, 642 (Idaho 1979), *overruled by State v. Humpherys*, 8 P.3d

652 (Idaho 2000).

The requirement of this "*Holder* instruction" was eliminated in *Humpherys*, which

was issued after Petitioner committed his crimes. In that case, the Idaho Supreme Court

held that, "once the jury has been properly instructed on the reasonable doubt standard of

proof, the defendant is not entitled to an additional instruction on circumstantial evidence even when all the evidence is circumstantial." *Humpherys*, 8 P.3d at 657.

Relying on *Humpherys*, the trial court denied Petitioner's request for a *Holder* instruction. Claim 3 asserts that, in doing so, the court committed an ex post facto violation.

### A.    *Clearly-Established Law*

The Ex Post Facto Clause of the Constitution prohibits States from enacting "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28 (1981) (internal citation and punctuation omitted); U.S. Const., Art. I, § 10, cl. 1. To constitute an ex post facto violation, the law or action "must be retrospective, and it must disadvantage the offender affected by it." *Weaver,* 450 U.S. at 29.

The constitutional prohibition on ex post facto laws was "intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Beazell v. Ohio*, 269 U.S. 167, 171 (1925). Therefore, if a state affects a legal change that is "merely procedural, and [that] does not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt," the change is not ex post facto. *Weaver*, 450 U.S. at 31 n.12 (internal quotation marks omitted).

There are four types of ex post facto laws: (1) laws that make "an action done before the passing of the law, and which was innocent when done, criminal"; (2) laws that "aggravate[] a crime, or make[] it greater than it was, when committed"; (3) laws that inflict a greater punishment than the law allowed when the crime was committed; and (4) laws

that "alter[] the legal rules of evidence, and receive[] less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Carmell v. Texas*, 529 U.S. 513, 522 (2000) (quoting *Calder v. Bull*, 3 Dall. 386, 390 (1798)) (emphasis omitted).

In *Carmell*, the United States Supreme Court considered the fourth type of law in the context of a state law that eliminated one of two required types of evidence to sustain a conviction. *Id*. at 516. A Texas law had previously required that, to convict a defendant of certain sex offenses, the prosecution had to produce "both the victim's testimony *and* corroborative evidence." *Id*. at 530. The law was later amended so that a defendant could be "convicted on the victim's testimony alone, without any corroborating evidence." *Id*. The Supreme Court held that the amendment—which "alter[ed] the legal rules of evidence" so that less or different evidence was deemed sufficient, thereby lessening "the quantum of evidence necessary to sustain a conviction"—was unconstitutional under the Ex Post Facto Clause as applied to crimes committed before the amendment's enactment. *Id*. (internal quotation marks omitted).

In Claim 3, Petitioner also asserts the fourth type of alleged ex post facto violation— that is, Petitioner claims that the trial court's refusal to give a *Holder* instruction "reduc[ed] the quantum of evidence required to convict." *Id*. at 532.

### B. The State Court's Rejection of Claim 3 Was Not Unreasonable under AEDPA

The Idaho Supreme Court concluded that its elimination of the *Holder* instruction in *Humpherys* "did not change the 'substantive law of crimes' but instead recognized that

direct and circumstantial evidence possess the same probative value and thus the reasonable doubt standard is applicable to both. It simply clarified that one standard of proof applies to all types of evidence." *Shackelford I*, 247 P.3d at 602. Because the change was only "procedural," the state court reasoned, it did not violate the Ex Post Facto Clause.

The state court's rejection of Claim 3 was a reasonable application of *Weaver* and its progeny. The United States Supreme Court has not clearly established that a state's elimination of a circumstantial-evidence-specific instruction violates the Ex Post Facto Clause. *See* 28 U.S.C. § 2254(d)(1). Therefore, Petitioner is not entitled habeas relief on Claim 3.

**4.     Claim 4: Alleged Failure to Give Unanimity Instruction Regarding Conspiracy Charges**

The murder-conspiracy instruction provided in relevant part that, in order to convict Petitioner of conspiracy to commit first-degree murder, the state had to prove that Petitioner agreed with his co-conspirators to commit first-degree murder and that "one of the parties to the agreement performed at least one of the following acts" for the purposes of carrying out that agreement:

> A.     Dale Carter Shackelford threatened to kill Donna Fontaine.
>
> B.     Dale Carter Shackelford hid his presence from Donna Fontaine, Gary Fontaine, and Ted Meske.
>
> C.     Dale Carter Shackelford went to Donna Fontaine's residence ….
>
> D.     Dale Carter Shackelford shot Donna Fontaine with a shotgun and pistol, killing her.

State's Lodging A-11 at 2200. The instruction concluded by stating,

> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

*Id.*

Similarly, the arson conspiracy instruction required the jury to find that "one of the parties to the agreement" to commit arson "performed at least one of the following acts":

> A.     Dale Carter Shackelford hid his presence from Donna Fontaine, Gary Fontaine, and Ted Meske;
>
> B.     Dale Carter Shackelford went to Donna Fontaine's residence ….
>
> C.     Dale Carter Shackelford poured flammable liquid in the garage at that location;
>
> D.     Dale Carter Shackelford lit fires in both stories of the garage[.]

*Id*. at 2203. The instruction again concluded by stating,

> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty of Conspiracy to Commit Arson in the First Degree. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty of Conspiracy to Commit Arson in the First Degree.

*Id*. at 2203-04.

In Claim 4, Petitioner asserts that the jury instructions on the conspiracy charges violated his right to due process because the instructions did not require that the jury unanimously agree as to which overt acts were committed in furtherance of the conspiracy.

## A.    Clearly-Established Law

The Constitution does not require, in all cases, that a jury be unanimous in order to convict a criminal defendant. *Johnson v. Louisiana*, 406 U.S. 356, 359 (1972) ("[T]his Court has never held jury unanimity to be a requisite of due process of law. Indeed, the Court has more than once expressly said that in criminal cases due process of law is not denied by a state law which dispenses with the necessity of a jury of twelve, or unanimity in the verdict.") (internal quotation marks and alterations omitted).

The United States Supreme Court has held, in the context of a first-degree murder alleged to have been committed either (1) during the course of a felony, or (2) with premeditation, that the Due Process Clause does not require juror unanimity as to which alternative the prosecution was able to prove beyond a reasonable doubt. *Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality) ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone."). "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* at 631–32. Therefore, "when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Id.* at 649 (Scalia, J., concurring in part and concurring in the judgment); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation marks omitted).

The Court has not found any Supreme Court precedent discussing juror unanimity in the specific context applicable here—whether, in order to convict a defendant of conspiracy, all jurors must agree as to which overt acts the defendant committed. But the Ninth Circuit, relying on *Schad*, has noted that there likely is no such constitutional requirement:

> It is not clear that a district court must instruct a jury that it must make a unanimous finding of which overt act was committed in furtherance of the conspiracy. The comments to Ninth Circuit Model Jury Instruction 8.20 state that the instruction should include language requiring unanimity as to the overt act when the applicable statute requires proof of an overt act. *The Supreme Court, however, has suggested that a jury need not specifically agree on which overt act was committed.*

*United States v. Chen Chiang Liu*, 631 F.3d 993, 1001 n.7 (9th Cir. 2011) (emphasis added) (citing *Schad v. Arizona*, 501 U.S. at 631, and *United States v. Griggs*, 569 F.3d 341, 343–44 (7th Cir. 2009)).

### B.    The State Court's Rejection of Claim 4 Was Not Unreasonable under AEDPA

The Idaho Supreme Court relied on *Schad* in rejecting Claim 4. The court determined that the jury instructions on conspiracy "were proper because unanimity as to each of the preliminary factual issues was not necessary." *Shackelford I*, 247 P.3d at 603.

Given that there is no Supreme Court case clearly establishing that jury unanimity is required with respect to the overt acts committed in furtherance of a conspiracy,

Petitioner's claim fails under § 2254(d)(1).[6] And even assuming *Schad* extends to the conspiracy context, Petitioner is still not entitled to relief on Claim 4 because the Idaho Supreme Court's application of *Schad* was not unreasonable under AEDPA. Just as a jury need not be unanimous as to whether a defendant killed the victim with premeditation or in the course of a felony, it also need not be unanimous as to the overt acts committed in furtherance of a conspiracy.

5.      **Claim 9: Sixth Amendment Jury Trial Claim Regarding Petitioner's Fixed Life Sentence**

The jury convicted Petitioner of two counts of first-degree murder, and the judge initially sentenced Petitioner to death. After those death sentences were invalidated, the state declined to seek the death penalty on resentencing. The judge sentenced Petitioner to two fixed life terms of imprisonment.

Claim 9 asserts that the imposition of the fixed life sentences by the judge—rather than the jury—violated Petitioner's Sixth Amendment right to a jury trial. Petitioner appears to contend that his fixed life sentences required a finding of unspecified "aggravators" and that the jury needed to make the required finding.

A.      *Clearly-Established Law*

The Sixth Amendment "indisputably entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (internal

---

[6] The Court need not determine whether the jury instructions on the conspiracy charges actually permitted a less-than-unanimous verdict as to which overt acts were committed in furtherance of the conspiracy.

quotation marks and alteration omitted). In *Apprendi*, the United States Supreme Court held that there is no distinction between "an 'element' of a felony offense and a 'sentencing factor'" for purposes of the jury trial guarantee. *Id*. at 478. Therefore, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. Under *Apprendi*, then, a judge may not increase a statutory maximum sentence based on facts not found by the jury beyond a reasonable doubt (unless the fact that increases the maximum sentence is the existence of a prior conviction).

In *Ring v. Arizona*, the United States Supreme Court extended *Apprendi* to the capital sentencing context, holding that "[c]apital defendants, no less than noncapital defendants … are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." 536 U.S. at 589. In doing so, the Court overruled prior precedent that allowed a judge, rather than a jury, to impose a death sentence based on "sentencing considerations" that the jury did not find beyond a reasonable doubt. *Id*. at 588-89.

### B.    The State Court's Rejection of Claim 9 Was Not Unreasonable under AEDPA

Idaho's first-degree murder statute permits a sentence of "death or [of] imprisonment for life," with a minimum fixed term of ten years' imprisonment. Idaho Code § 18-4004. A person guilty of conspiracy to murder is subject to punishment "in the same manner and to the same extent" as one guilty of murder. Idaho Code § 18-1701. The Idaho Supreme Court, on appeal from the dismissal of Petitioner's post-conviction petition,

rejected Claim 9 because Petitioner's fixed life sentences for first-degree murder and for conspiracy to commit murder did not "exceed [those] statutory sentencing limits." *Shackelford v. State*, 372 P.3d 372, 379 (2016).

There is no clearly-established Supreme Court precedent holding that a statute permitting a fixed life sentence is unconstitutional if it allows a judge, rather than a jury, to determine that sentence. Under Idaho law, a finding of a statutory aggravator is required only to impose a death sentence—*not* a sentence of life without parole. *See* Idaho Code § 19-2515 (post-*Ring* capital sentencing procedures). The prosecution did not seek the death penalty against Petitioner on resentencing. Therefore, there were no statutory aggravators that the state had to prove, and *Apprendi* has no application here.

The Idaho Supreme Court's decision on Claim 9 was not unreasonable under § 2254(d). Petitioner's attempt to incorporate *Ring v. Arizona* into the noncapital sentencing context has no merit, and Petitioner is not entitled to relief on Claim 9.

## CONCLUSION

For the foregoing reasons, Petitioner is not entitled to habeas relief on Claims 1, 2(b), 3, 4, or 9. Because all Petitioner's other claims have already been dismissed, the Court will enter judgment in favor of Respondent.

## ORDER

**IT IS ORDERED:**

1.     Claims 1, 2(b), 3, 4, and 9 of the Amended Petition for Writ of Habeas Corpus (Dkt. 9) are DENIED.

2.       The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: November 1, 2019

David C. Nye
Chief U.S. District Court Judge